```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x
```

PRO'S CHOICE BEAUTY CARE, INC.,

                Petitioner,

  -against-

LOCAL 2013, UNITED FOOD AND COMMERCIAL WORKERS,

                Respondent.

**Decision & Order**
16-cv-2318(ADS)(ARL)

```
--------------------------------------------------------------------------x
```
**APPEARANCES:**

**Jackson Lewis, P.C.**
*Attorneys for the Petitioner*
58 South Service Road, Suite 250
Melville, NY 11747
        By:    Steven S. Goodman, Esq.
                Kathryn J. Barry, Esq., Of Counsel

**O'Brien Belland & Bushinsky, LLC**
*Attorneys for the Respondent*
1526 Berlin Road
Cherry Hill, NJ 08002
        By:    Kevin D. Jarvis, Esq., Of Counsel

**SPATT, District Judge:**

       On May 9, 2016, the Petitioner Pro's Choice Beauty Care, Inc. (the "Petitioner") commenced this action by filing a petition (the "Petition") to partially vacate an arbitration award (the "Arbitration Award").

       Thereafter, on August 31, 2016, the Respondent Local 2013, United Food and Commercial Workers (the "Respondent" or "Union") responded to the Petition by way of a cross-petition (the "Cross-Petition"), seeking to confirm the Arbitration Award.

       The parties have advised the Court that the disposition of these opposing petitions will conclude the litigation without the need for discovery.

Thus, for the reasons that follow, the Petitioner's Petition is granted; the Respondent's Cross-Petition is denied; and this case is closed.

I. BACKGROUND

The following facts are undisputed.

At all relevant times, non-party Miguel Nino was employed by the Petitioner. Mr. Nino is a member of the Respondent Union, and as such, his employment is governed by the terms of a collective bargaining agreement (the "CBA").

Relevant here, the CBA requires employment-related disputes between the Petitioner and covered employees to be submitted to binding arbitration. In particular, the CBA expressly states that the arbitrator selected to preside over such disputes lacks the authority to add to, delete, or modify the terms of the CBA. Further, the CBA states that the arbitrator's decision shall comply with all applicable laws, statutes, and regulations.

On or about July 8, 2015, the Petitioner suspended Mr. Nino's employment.

On or about July 10, 2015, the Union filed a grievance on Mr. Nino's behalf challenging the suspension.

Consistent with the provisions of the CBA, the parties submitted their dispute to arbitrator Roger Maher, who held hearings on October 22, 2015; November 18, 2015; and January 29, 2016.

During the January 29, 2016 hearing, Mr. Nino testified that he was not legally authorized to work in the United States, and that he had provided false employment eligibility documents at the time of his hire by the Petitioner.

The Petitioner alleges that, at an unspecified time after this hearing, its counsel engaged in *ex parte* communication with Arbitrator Maher. Specifically, counsel allegedly advised Arbitrator Maher that, in view of Mr. Nino's admission that he was not authorized to work in the United States, the Petitioner was legally prohibited by the Immigration Reform and Control Act of 1986

("IRCA") from reinstating his employment. The Court notes that the Respondent denies having knowledge or information sufficient to confirm or deny the truth of this account.

In any event, on February 7, 2016, Arbitrator Maher issued a written decision (previously defined as the "Arbitration Award"), which, in pertinent part, directed the Petitioner to reinstate Mr. Nino's employment within 72 hours. The Arbitration Award makes no reference to Arbitrator Maher's *ex parte* communication with the Petitioner's counsel.

Due to an apparent administrative error, the Respondent did not receive the Arbitration Award on the date it was issued, and, therefore, Mr. Nino did not report to work within the prescribed time period.

On February 23, 2016, upon learning of the error, Arbitrator Maher issued a written notice to the parties directing that, consistent with the original Arbitration Award, Mr. Nino's employment was to be reinstated "quickly and without further delay." Again, this notice made no reference to Arbitrator Maher's *ex parte* communication with the Petitioner's counsel.

On February 25, 2016, the Petitioner advised Mr. Nino that, notwithstanding the apparent import of the Arbitration Award, he could not return to work unless and until he submitted appropriate documentation evidencing his authority to work in the United States.

Mr. Nino did not produce any such documentation, and has consequently remained out of work.

## II. Discussion

The purpose of this proceeding is not to reexamine the merits of the parties' dispute; to interpret anew the relevant provisions of the CBA; or otherwise to review Arbitrator Maher's conclusion, based on the hearing testimony and documentary evidence, that Mr. Nino was entitled to have his employment reinstated.

Rather, the sole issue for the Court is whether, as a matter of federal law, the Arbitration Agreement is enforceable.

The Petitioner thinks not, arguing that compliance with the Arbitration Award would constitute a knowing violation of IRCA, and thus be inconsistent with public policy and the CBA's mandate that the arbitrator issue a decision that complies with all applicable laws, statutes, and regulations.

The Respondent sees no barrier to enforcement, arguing that, so long as the Arbitration Award "drew its essence" from the CBA, this Court lacks legal authority to overturn it.

For the reasons that follow, the Court concurs with the Petitioner.

A. **The Legal Standards**

"Normally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court,'" *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984), and the court 'must grant' the award 'unless the award is vacated, modified, or corrected.' 9 U.S.C. § 9." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

"A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *Id.* (citing *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)).

One of the grounds upon which a court may vacate an arbitral award is that it contravenes public policy. *See Cabrini Med. Ctr. v. Local 1199, Drug, Hosp. & Health Care Empls. Union, RWSDU*, 731 F. Supp. 612, 616 (S.D.N.Y. 1990). This principle, which "is derived from the common law doctrine of refusing to enforce a contract that violates law," authorizes courts to vacate an arbitral award "if it conflicts with 'laws and legal precedents.'" *Park Plaza Hotel v. Local 217, Hotel & Restaurant Workers' & Bartenders Union*, No. 89-cv-183, 1990 U.S. Dist. LEXIS 15863, at *8 (D. Conn. Aug. 21, 1990) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43, 108 S. Ct. 364, 373, 98 L. Ed. 2d 286 (1987)); *see Kane Gas Light & Heating Co. v. Int'l Bhd. of Firemen & Oilers, Local 112*, 687 F.2d 673, 682 (3d Cir. 1982)

4

(relying on Second Circuit precedent to conclude that "if upholding an [arbitral] award would amount to 'judicial condonation' of illegal acts," then it should be vacated).

> To determine whether an arbitration award is contrary to public policy, the first step is to identify the public policy at issue. The doctrine is only applicable where the public policy is well-defined and dominant as "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *W.R. Grace [and Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum and Plastic Workers of America]*, 461 U.S. [757,] 766 [103 S. Cr. 2177, 76 L. Ed. 2d 298 (1983)] (quoting *Muschany v. United States*, 324 U.S. 49, 66, 89 L. Ed. 744, 65 S, Ct. 442 (1945)). The determination of the relevant public policy is for the court. *Id.* Once the public policy is identified, the question becomes whether enforcement of the arbitration award would violate that policy. *Misco*, 484 U.S. at 43 ("At the very least, an alleged public policy must be properly framed under the approach set out in *W.R. Grace*, and the violation of such policy must be clearly shown if an award is not to be enforced.")

*Consolidated Edison v. Utility Workers' Union of Am.*, No. 95-cv-1672, 1996 U.S. Dist. LEXIS 9182, at *6 (S.D.N.Y. July 3, 1996).

Thus, in order for this rule to apply, the final relief the arbitral award orders – as opposed to the conduct giving rise to the dispute, or the arbitrator's reasoning – must contravene a dominant and well-defined public policy. *See Park Plaza Hotel*, 1990 U.S. Dist. LEXIS 15863, at *9 (citing *Misco*, 484 U.S. at 374).

B.   Application to the Facts of this Case

Applying the two-step inquiry articulated in *Consolidated Edison v. Utility Workers' Union of Am.*, *supra*, the Court finds that the challenged portion of the Arbitration Award is unenforceable in that it violates the public policy codified in IRCA.

First, the Court finds – and the Respondent does not appear to dispute – that IRCA's prohibition against employing undocumented aliens clearly constitutes a sufficiently dominant and well-defined policy to support application of the public policy doctrine here.

Indeed, the Supreme Court has plainly recognized that IRCA is "a comprehensive scheme prohibiting the employment of illegal aliens in the United States," which has " 'forcefully' made combating the employment of illegal aliens central to 'the policy of immigration law.' " *Hoffman Plastic*

*Compounds, Inc. v. NLRB*, 535 U.S. 137, 147, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002) (quoting *INS v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 194, 112 S. Ct. 551, 116 L. Ed. 2d 546 (1991)).

In view of this policy rationale, the Supreme Court has explained that IRCA establishes "an extensive 'employment verification system,' § 1324a(a)(1), designed to deny employment to aliens who (a) are not lawfully present in the United States, or (b) are not lawfully authorized to work in the United States, § 1324a(h)(3)." *Id.*; *see also Palma v. NLRB*, 723 F.3d 176, 185 (2d Cir. 2013) (observing that "IRCA's purpose was 'to control illegal immigration to the U.S.,' both by deterring employers 'from hiring unauthorized aliens' and by 'deter[ring] aliens from entering illegally or violating their status in search of employment' " (quoting H.R. Rep. No. 99-628(I), at 45-46, *reprinted in* 1986 U.S. Code Cong. & Admin. News 5649, 5449-50)).

Thus, it has been recognized that the policy against employing undocumented aliens is sufficiently explicit, well-defined, and dominant to justify application of the public policy doctrine in reviewing arbitration awards. *See, e.g.*, *Aramark Facility Servs. v. SEIU Local 1877*, 530 F.3d 817, 824 (9th Cir. 2008) (noting that the policies embodied in IRCA "are 'explicit,' 'well-defined,' and 'dominant,' expressed not by 'general considerations' but by IRCA, its implementing regulations, and Supreme Court case law interpreting it. They are therefore an adequate basis for [the Petitioner]'s public policy attack" on an arbitral award).

Second, the Court finds, and again the Respondent fails to materially dispute that the challenged portion of the Arbitration Award would result in a violation of the public policy in question, namely, the Petitioner's reinstatement of Mr. Nino with knowledge not only that he currently lacks sufficient documentation authorizing him to work in the United States, but that he previously tendered false documentation to gain employment. Under the statute, both of these acts are proscribed conduct. *See, e.g.. Hoffman Plastic Compounds, Inc.*, 535 U.S. at 148 (noting that, "[i]f an alien is unable to present the required document, the unauthorized alien cannot he hired" and that

the "IRCA also makes it a crime for an unauthorized alien to subvert the employer verification system by tendering fraudulent documents").

As the Supreme Court has noted, IRCA makes it "impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit congressional policies." *Id.* The present case provides no exception to this rule.

Consequently, the Court finds that the portion of the Arbitration Award purporting to require the Petitioner to reinstate Mr. Nino is unenforceable as contravening settled immigration policy. It is therefore vacated.

In reaching this conclusion, the Court notes that the Second Circuit, in a related context, has authorized more lenient relief in the form of reinstatement conditioned upon an employee's submission of IRCA-compliant documentation. *See Palma*, 723 F.3d at 187. However, in the Court's view, such relief is not available here, as the record shows that, following the issuance of the Arbitration Award, the Petitioner gave Mr. Nino an opportunity to provide documentation evidencing his authority to work in the United States, and he failed to do so.

Having found that the challenged portion of the Arbitration Award violates public policy, the Court need not consider the Petitioner's alternative arguments at this time.

### III.  CONCLUSION

Based on the foregoing, the Petitioner's Petition seeking to partially vacate the Arbitration Award is granted to the extent set forth above; the Respondent's Cross-Petition to confirm the Arbitration Award is denied in its entirety; and this case is closed.

It is **SO ORDERED:**

Dated: Central Islip, New York
March 7, 2017

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge

7